IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRANCE LEWIS,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| **CAPITAL ONE BANK** | : | |
| *Defendant.* | : | **NO. 21-5524** |

**MEMORANDUM**

**KENNEY, J.**                                                                                                 **December 1, 2022**

I.        INTRODUCTION

*Pro se* Plaintiff Terrance Lewis ("Plaintiff") asserts two claims against Defendant Capital One, N.A.[1] ("Defendant"), alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"), pursuant to 15 U.S.C. §§ 1681e(b), 1681i, when it failed to mark Plaintiff's $1,800 debt as disputed. ECF No. 20. Before the Court is Defendant's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) to which Plaintiff has not responded, and which is now ripe for consideration. ECF No. 21. For the reasons set forth below, the Court will **DENY** the Defendant's Motion. An appropriate order will follow.

---

[1] On October 1, 2022, Capital One Financial Corporation completed the merger of its wholly owned subsidiary Capital One Bank (USA), National Association with and into Capital One, National Association ("CONA"), a wholly owned subsidiary of Capital One, with CONA as the surviving entity. ECF No. 21-1 at 1 n.1.

1

II.     **BACKGROUND**

The Court recently recounted the factual background of this case (ECF No. 16) and will describe the relevant facts again, here.

Plaintiff maintains that, on an unidentified date in 2018, Plaintiff used a website called "myFICO.com" to check their credit report. *Id.* ¶ 18. The report, furnished by myFICO.com, alerted Plaintiff to an outstanding debt in the amount of $1,800 which Defendant reported on an unspecified tradeline. *Id.* However, the tradeline did not accurately report the debt's balance, the date it was incurred, or its payment history. *Id.* Due to these inaccuracies, Plaintiff disputed the debt directly with Defendant via phone call on an unspecified date in 2018. *Id.* During the phone call, Defendant confirmed the inaccuracy of the outstanding balance of $1,800, the date the credit was extended, and the debt's payment history. *Id.* Despite Defendant's 2018 admission that the tradeline contained inaccuracies, and, presumably, Defendant's recognition that the inaccuracies would be resolved, Plaintiff instead noticed a material diminution of their credit score when they re-checked their credit report in 2021. *Id* ¶ 19. Therefore, presumably, the inaccuracies were not rectified. *Id.*

Subsequently, an unidentified "credit reporting agency alerted Defendant of the credit information of the dispute." *Id.* ¶ 21. Then, according to Plaintiff, although Defendant had the knowledge, capability, duty, and capacity to correct the inaccurate information that was negatively affecting Plaintiff's credit score, Defendant either negligently or intentionally failed to do so. *Id.* ¶¶ 22–32. Plaintiff suspects that Defendant's failure to correct the inaccurate information stems from a larger, systemic failure to "design and implement an electronic method to contact Plaintiff," and presumably other similarly situated consumers, to ensure that the information Defendant reports is as accurate as possible. *Id.* ¶¶ 32–47.

Finally, at some point, Plaintiff made a "request for deletion or modification of the inaccurate and/or incomplete information identified in consumer reports" and submitted formal dispute letters requesting an explanation of Defendant's reinvestigation procedure. *Id.* ¶¶ 59, 60. Additionally, at some point, Plaintiff turned to consumer reporting agencies in an attempt to resolve the issue and spent considerable time and effort doing so. *Id.* ¶¶ 67, 69. It is unclear whether Plaintiff's efforts, with the assistance of these agencies, resulted in corrections to the tradeline's inaccuracies. However, Plaintiff maintains that they have not been provided with a copy of Defendant's reinvestigation results (assuming Defendant reinvestigated the matter in the first place), and that each time Plaintiff attempted to access those results, they were stymied by Defendant. *Id.* ¶¶ 61–66.

In sum, Defendant's apparent failure to disclose to consumer reporting agencies that the $1,800 debt was disputed caused Plaintiff's FICO scores to be lowered, which resulted in either credit being denied or extended with a "much higher" interest rate. *Id.* ¶ 20. Accordingly, Plaintiff suffered damage to their personal and credit reputation, which "caused severe humiliation, emotional distress and mental anguish." *Id.*

### III.    PROCEDURAL HISTORY

Though previously described by the Court (ECF No. 16), the Court takes this opportunity to reiterate the procedural history of this case. Plaintiff filed a one-count Complaint against Defendant on December 21, 2021, asserting that Defendant's failure to report to consumer reporting agencies that the $1,800 debt was disputed constituted an unfair collection practice

violative of the FDCPA. ECF No. 1. Several missed deadlines and procedural deficiencies followed, significantly extending the duration of this matter.

First, the Complaint was procedurally defective because it did not provide an original signature as required by Federal Rule of Civil Procedure 11, nor did Plaintiff pay the required filing fees. *See* ECF Nos. 1, 3. In response to these deficiencies, on January 5, 2022, the Court issued an Order requiring that Plaintiff either pay the outstanding fees or file a motion to proceed *in forma pauperis* within thirty days. ECF No. 3 ¶ 1. The Order further required Plaintiff to complete and return a declaration form with an original signature within thirty days or else the case might "be dismissed without further notice for failure to prosecute." ECF No. 3 ¶ 5. The thirty-day period expired on February 4, 2022, without the required filings or payment from the Plaintiff.

On February 28, 2022, twenty-four days after the Court's February 4 deadline, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*. ECF No. 4. However, Plaintiff failed to return the Declaration form with the required original signature. ECF Nos. 3, 4. Instead of dismissing the case for failure to prosecute, which, at this point, was firmly within the Court's discretion, the Court issued another Order on March 7, 2022, again requiring that Plaintiff complete and return the declaration with an original signature. ECF No. 6 ¶ 1. The Court permitted Plaintiff fourteen days, or until March 21, 2022, to comply. *Id.*

On March 31, 2022, ten days after the Court's March 21 deadline, the Plaintiff filed the required Declaration form with an original signature. ECF No. 7. After Plaintiff cured the Complaint, the Court issued an Order on April 1, 2022, denying Plaintiff's Motion to proceed *in forma pauperis* and requiring that Plaintiff remit the filing fees by May 1, 2022. ECF No. 8.

4

On June 7, 2022, still without payment from Plaintiff, the Court dismissed the case without prejudice for failure to prosecute. ECF No. 9. Fourteen days later, on June 28, 2022, Plaintiff remitted the filing fees to the Clerk of Court. ECF No. 10. The Court subsequently vacated the June 7, 2022, Order. ECF Nos. 9, 12. Defendant was served with Plaintiff's cured Complaint on August 15, 2022. ECF No. 13.

On August 25, 2022, Defendant filed a timely Motion to Dismiss for failure to state a claim. ECF No. 14. Defendant asserted that its conduct could not violate the FDCPA because it is not a "debt collector," as defined by the Act. ECF No. 14 at 3. Defendant continued in the alternative that, even if it were encompassed by the Act's definition of "debt collector," Plaintiff's claim was still legally deficient because the FDCPA requires that Plaintiff allege a practice by Defendant involving an attempt to collect a debt. *Id.* at 4. Defendant pointed out that Plaintiff made no explicit allegation that the failure to notify consumer reporting agencies that the debt was in dispute constituted an attempt to collect the $1,800 debt. *Id.*

Plaintiff had until September 8, 2022, to respond to Defendant's Motion. Pa. R. C. P. 7.1(c) (permitting fourteen days to respond to motions). Plaintiff did not file a response, either timely or untimely. Alternatively, Plaintiff could have filed an amended complaint by September 15, 2022. Fed. R. Civ. P. 15(a)(1)(B) (permitting twenty-one days to amend the complaint following a motion to dismiss). Plaintiff did not use this option, either. Accordingly, the Court treated Defendant's Motion to Dismiss as uncontested and ripe for consideration. *See* Pa. R. C. P. 7.1(c).

The Court granted Plaintiff's Motion to Dismiss and dismissed the case with prejudice on October 31, 2022. ECF No. 16. That same day, Plaintiff alerted the Court to a clerical error in which a previously filed Amended Complaint was not properly docketed. ECF No. 17. Though

5

the Amended Complaint was filed on October 20, 2022, well after the September 15, 2022 deadline, the Court accepted the Amended Complaint and vacated its prior order dismissing the case. ECF No. 19.

Defendants moved to dismiss the Amended Complaint on November 8, 2022. ECF No. 21. Defendants assert that Plaintiff's claims should be dismissed because Capital One is not a consumer reporting agency and because the FCRA does not provide a private right of action for direct disputes made to a furnisher. *Id.* Again, Plaintiff failed to respond or file an amended complaint by the November 22, 2022 and November 29, 2022 deadlines, respectively. Pa. R. C. P. 7.1(c); Fed. R. Civ. P. 15(a)(1)(B). Accordingly, the Court will treat Defendant's Motion to Dismiss as uncontested and ripe for consideration. *See* Pa. R. C. P. 7.1(c).

### IV. STANDARD OF REVIEW

To survive a motion to dismiss, the complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when the plaintiff pleads factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The *pro se* litigant's complaint is "to be liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).; *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). However, *pro se* plaintiffs still must meet a minimum standard by "alleg[ing] sufficient facts in their complaint to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Here, *pro se* Plaintiff has not responded to Defendant's Motion to Dismiss. When a defendant's Rule 12(b)(6) motion is uncontested, the Court may grant the unopposed motion only *after* analyzing it on the merits. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Gary v. Pa. Human Relations Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012) ("[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, *notwithstanding local rules* regarding the granting of unopposed motions.") (emphasis added).

## V.   DISCUSSION

In passing the FCRA, Congress sought "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201 (2007). To achieve the goal of ensuring fair and accurate credit reporting, the Act places obligations on three types of entities: (1) consumer reporting agencies,[2] (2) users of consumer reports, and (3) furnishers[3] of information to consumer reporting agencies. 15 U.S.C. § 1681, *et seq*. Though accurate classification is therefore important to stating a viable FRCA claim, the FCRA is also construed liberally "to

---

[2] "Among other things, the FCRA requires consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of' consumer reports, § 1681e(b); to notify providers and users of consumer information of their responsibilities under the FCRA, § 1681e(d); and to limit the circumstances in which such agencies provide consumer reports 'for employment purposes, § 1681b(b)(1).'" *Ebrahimzadeh v. Sharestates Invs., LLC*, No. CV 18-1659, 2018 WL 6065419 at *8 (E.D. Pa. Nov. 20, 2018).

[3] Section 1681s-2(b) of the FCRA "imposes certain duties on a furnisher/creditor who has been notified by a consumer credit reporting agency that a consumer has disputed information furnished by that furnisher/creditor." *See Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 90 (3d Cir. 2017).

7

satisfy the 'consumer oriented objectives'" of the Act. *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *4 (E.D. Pa. June 24, 2016), *aff'd by Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 90 (3d Cir. 2017) (citing S.Rep. No. 91-517, at 3 (1969)).

### a. **Defendant is not a "consumer reporting agency" pursuant to 15 U.S.C. § 1681a(f)**

Plaintiff asserts that Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). ECF No. 20 ¶ 15. A consumer reporting agency is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, *regularly engages* in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (emphasis added). Plaintiff only alleges that Defendant prepared consumer reports "regarding Plaintiff" and, summarily, that Defendant furnishes these reports to third parties. ECF No. 20 ¶¶ 14, 22. Such allegations are conclusory and deficient. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive Rule 12(b)(6) dismissal); *see also Dessus v. Equifax*, No. 22-CV-1926, 2022 WL 2048666 at *3 (E.D. Pa. June 7, 2022) (rejecting Plaintiff's FCRA claim on the basis that the allegations are "sparse, conclusory, and not plausible"). Moreover, persuasive precedent indicates that banks and retailers are not consumer reporting agencies under the FCRA when they are merely providing information based upon their own experiences with customers, which is precisely what Plaintiff alleges Defendant did, here. ECF No. 20 ¶ 18 ("Defendant furnished a trade line of $1,800, allegedly owed to [Defendant]."); *see, e.g.*, *Todd v. Ass'd Credit Bureau Services, Inc.*, 451 F.Supp. 447, 448-49 (E.D. Pa. 1977); *aff'd without opinion* 578 F.2d 1376 (3d

Cir. 1978); *DiGianni v. Stern's*, 26 F.3d 346, 348 (2d Cir. 1994) (overruled by statute on other grounds); *Smith v. First National Bank*, 837 F.2d 1575 (11th Cir. 1988).

Plaintiff presents two theories of liability against Defendant, both of which are exclusively premised upon Defendant's status as a consumer reporting agency. ECF No. 20 ¶¶ 74–89. Plaintiff alleges that Defendant violated § 1681e(b) by failing to maintain maximum possible accuracy in preparing consumer reports (*Id.* ¶¶ 74–83) and § 1681i by negligently or intentionally failing to act regarding information in Plaintiff's consumer report or credit file. *Id.* ¶¶ 84–89. Both provisions impose liability exclusively on consumer reporting agencies. Specifically, Section 1681e(b) states that, when preparing a consumer report, a *consumer reporting agency* must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Similarly, Section 1681i imposes requirements on consumer reporting agencies, *not* furnishers of information to consumer reporting agencies. 15 U.S.C. § 1681i(a)(1)(A) ("the *agency* shall . . . conduct a reasonable reinvestigation"); *see Bibbs v. Trans Union LLC*, 43 F.4th 331, 345 (3d Cir. 2022). Accordingly, dismissal is appropriate because Defendant is not a consumer reporting agency such that Plaintiff's theory of liability can survive dismissal.

a. **Plaintiff has pled a plausible claim against a "furnisher" pursuant to 15 U.S.C. § 1681s-2(b)**

The factual content that Plaintiff does allege points to the conclusion that Defendant, in this context, is a "furnisher" of credit information. A "furnisher" is an entity which transmits information about a particular debt owed by a particular consumer to a consumer reporting agency. *Donohue v. C. Blosenski Disposal Co.*, No. 05-5356, 2006 WL 3423888 at *3 (E.D. Pa. Nov. 28, 2006); *accord* 16 C.F.R. § 660.2(c). Plaintiff alleges that "Defendant furnished a trade

9

line of $1,800 allegedly owed to CAPITAL ONE BANK." ECF No. 20 ¶ 18. Defendant's furnishment of a tradeline containing information about a debt owed to Defendant itself makes Defendant a "furnisher" under the FCRA. *See* 16 C.F.R. § 660.2(c); *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 90 (3d Cir. 2017). Plaintiff further suggests that Defendant is a "furnisher" when they state that "[t]he credit reporting agency alerted Defendant of the credit information of the dispute" because such alerts are generally directed to furnishers.  ECF No. 20 ¶ 21. Therefore, the Court, drawing all inferences in favor of the *pro se* Plaintiff, will look beyond Plaintiff's inaccurate categorization of Defendant as a "consumer reporting agency," and assess whether an otherwise viable claim is stated against a "furnisher." *See Haines*, 404 U.S. 519, 520 (requiring that a *pro se* litigant's complaint be "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers").

Defendant correctly alludes to the fact that the only FCRA provision "that can be enforced by a private citizen seeking to recover damages *caused by a furnisher of information*" is § 1681s-2(b). *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (emphasis added). While Defendant asserts that "[t]o the extent Plaintiff disputed the accuracy of the information in her credit report directly with Capital One . . . [the] FCRA claim fails as a matter of law" pursuant to § 1681s-2(a), Defendant does not address whether Plaintiff has stated a viable claim pursuant to § 1681s-2(b). *See* ECF No. 21.

To state a claim against a furnisher of information under § 1681s-2(b)(1), a consumer must plead that they: "[1] filed a notice of dispute with a consumer reporting agency; [2] the consumer reporting agency notified the furnisher of information of the dispute; and [3] the furnisher of information failed to investigate and modify the inaccurate information." *Harris*,

2016 WL 3473347, at *6; *see also* 15 U.S.C. §§ 1681s-2(b), 1681n & § 1681o. At this stage, the Court considers whether Plaintiff's *pro se* pleadings allege sufficient factual information from which to reasonably infer that Defendant is liable under the FCRA.

First, Plaintiff's allegations indicate that they filed a notice of dispute with a consumer reporting agency. Indeed, Plaintiff notes that they spent significant time working to resolve the inaccuracies with Experian and Equifax, both of which are consumer reporting agencies. ECF No. 20 ¶¶ 67–68. Second, though Plaintiff does not specify whether it was Experian or Equifax, Plaintiff also alleges that an agency[4] "alerted Defendant of the credit information of the dispute," which bolsters the inference that Plaintiff correctly filed a notice of dispute. *Id.* ¶ 21. Finally, Plaintiff's Amended Complaint is replete with pleadings that Defendant failed to investigate and modify the inaccurate information. *See, e.g.*, *id.* ¶¶ 52–54. The facts alleged, which must be taken as true at this stage, are enough to "allow[] the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678; *cf. Prater*, 351 F. Supp. 3d at 918 (finding that dismissal was warranted when Plaintiff did not "clearly identify the accounts or inaccuracies at issue, allege[] that [they] filed a notice of dispute with any credit reporting agency, or explained how furnishers of [the] account information failed to investigate any dispute"). Moreover, in light of Plaintiff's *pro se* status and the "consumer oriented objectives" of the FCRA, the Court is satisfied that Plaintiff sufficiently pled facts to satisfy all *Harris* factors and, therefore, that a viable FCRA can be reasonably inferred pursuant to § 1681s-2(b).

---

[4] Though Plaintiff refers to a credit reporting agency, the Court infers that the *pro se* Plaintiff was referring to a consumer reporting agency.

## VI. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 21) will be **DENIED** and Plaintiff's Amended Complaint (ECF No. 20) will be construed as stating a claim against a furnisher of information pursuant to the FCRA.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**