**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRANCE LEWIS,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CAPITAL ONE BANK** | : | |
| *Defendant.* | : | **NO. 21-5524** |

**MEMORANDUM**

**KENNEY, J.**                                                                            **May 12, 2023**


## I.      INTRODUCTION

*Pro se* Plaintiff Terrance Lewis ("Plaintiff") brings this action against Defendant Capital One, N.A.[1] ("Defendant"), under the Fair Credit Reporting Act ("FCRA"), which the Court previously construed as stating a claim under 15 U.S.C. § 1681s-2(b). Before the Court is Defendant's Motion for Summary Judgment to which Plaintiff has not responded. ECF No. 32. For the reasons set forth below, the Court will grant the Defendant's Motion. An appropriate order will follow.

## II.      BACKGROUND & PROCEDURAL HISTORY

On or about August 16, 2011, Plaintiff opened a credit card account with the Defendant and bearing credit card account No. x1009 (the "Account"). ECF No. 32-3 ¶ 4. On October 7, 2011, Plaintiff made his first purchase with the credit card. *Id.* ¶ 5. After Plaintiff stopped making the minimum required payments, Defendant closed and charged off the Account on January 3, 2018. *Id.* ¶ 6. At the time, the outstanding balance was $2,133.59. *Id.* ¶ 7. Defendant and Plaintiff

---

[1] Erroneously named as "Capital One Bank."

subsequently reached an agreement to settle the balance and, accordingly, on July 31, 2018, Defendant received payment of $1,550, and subsequently reduced the balance on the Account to $0. ECF No. *Id.* ¶¶ 7–8.

At some unspecified time in 2018, Plaintiff visited the website "Myfico.com" which indicated an outstanding balance of $1,800 associated with the Account on his credit report. ECF No. 20 ¶ 18. Plaintiff then called Defendant and raised a direct dispute with an unknown representative allegedly related to the balance owed on the Account, the date of account opening, and the payment history. *Id*. Plaintiff alleges he has not received the results of any actions taken by Defendant, nor has he received any calls or attempts to investigate his dispute and that Defendant failed to respond to or provide details of the investigation Defendant allegedly performed within thirty days of receipt of the dispute. *Id.* ¶¶ 52–54, 61.

On October 11, 2020, Defendant received an indirect dispute from Equifax concerning the Account. ECF 32-3 ¶ 9. The indirect dispute contained a copy of Plaintiff's dispute letter dated September 30, 2020. *Id.* ¶ 10. In the letter, Plaintiff requested that Equifax verify the Account and provide a signed copy of his contract with Defendant. ECF No. 32-3, Ex. A. The September 2020 letter did not identify any specific inaccuracy in the reporting, nor did it dispute the balance owed, account opening date, or payment history. ECF No. 32-3 ¶ 9. At the time of the dispute the Account had a balance of $0 with the date opened listed as August 16, 2011. *Id.* ¶ 11. Defendant responded to the dispute with this information on October 13, 2020. *Id.* ¶ 12. Moreover, following this dispute, Defendant updated the payment history for several months from "no payment history available" to "current" and verified that the consumer reporting agency had the updated information. ECF No. 32-2 ¶¶ 14–15.

On September 16, 2021, Defendant received an indirect dispute via Experian concerning the Account. ECF No. 32-3 ¶ 15. There was no image or letter attached to the dispute. *Id.* ¶ 16. At the time of the dispute the Account still had a balance of $0 with the date opened listed as August 16, 2011. *Id.* ¶ 17. Defendant responded to the dispute on September 17, 2021, confirming such information. *Id.* ¶ 18. Again, in response to the dispute, Defendant confirmed the payment history was accurate. *Id.* ¶ 21.

Plaintiff alleges that due to Defendant's acts and omissions, he has spent a significant amount of time and effort addressing the allegedly false, inaccurate, and incomplete information. ECF No. 20 ¶ 67. Indeed, Plaintiff maintains that he has lost credit opportunities and been denied credit applications and loans due to the consumer information furnished by Defendant, which has caused Plaintiff mental stress, emotional stress, and anxiety. *Id.* ¶ 71. Plaintiff is seeking $45,000 for statutory, actual, and punitive damages under FCRA. *Id.* at 14. Additionally, Plaintiff is seeking a pre-judgment & post-judgment interest of $5,000. *Id.*

The Court incorporates its previous description of the procedural history set forth in the decision denying Defendant's Motion to Dismiss. ECF No. 22. Following the Court's denial of Defendant's Motion to Dismiss, Defendant filed its Answer on December 12, 2022. ECF No. 25. The case was set then for arbitration but, prior to the arbitration date, Defendant filed the instant Motion for Summary Judgment on March 31, 2023. ECF No. 32. On April 3, 2023, the Court ordered that Plaintiff file a response by April 18, 2023.[2] ECF No. 34. To date, nearly one month after this deadline, Plaintiff has not filed a response to Defendant's Motion.

---

[2] The Court notes that Plaintiff has a pattern of failing to file timely responses, despite reminders to do so. While the Court maintains as much flexibility with *pro se* litigants as possible, this particular Plaintiff appears to have abandoned his case.

III.     **STANDARD OF REVIEW**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d

965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issue of material fact, a court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). This standard applies with equal force to a *pro se* plaintiff. *Erickson v. Parduc*, 551 U.S 89, 94 (2007).

## IV.   <u>DISCUSSION</u>

Summary judgment is often described as "put up or shut up time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings." *See, e.g.*, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal citations omitted). Plaintiff has not responded to this Motion and has not produced any contradictory evidence. Indeed, even viewing the evidence presented by Defendant in the light most favorable to Plaintiff, no fair-minded jury could return a verdict for Plaintiff. *See*

*Anderson*, 477 U.S. at 252. Accordingly, summary judgment must be entered in favor of Defendant.

The primary basis of Plaintiff's claim is that Defendant failed to reasonably investigate the dispute initiated in January 2018 regarding an outstanding balance of $1,800. ECF No. 32-2 ¶ 24. To succeed in a claim against a furnisher of information under § 1681s-2(b)(1), a consumer must show that: "[1] they filed a notice of dispute with a consumer reporting agency; [2] the consumer reporting agency notified the furnisher of information of the dispute; and [3] the furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pennsylvania Higher Educ. Assistance Agency*, No. 16-cv-16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016). Plaintiff has not satisfied the first element.

Though Plaintiff involved consumer reporting agencies at some point, *see infra*, he did not file a notice of dispute with such an entity in relation to the January 2018 dispute or the $1,800 outstanding balance. Importantly, in the absence of notice *from a consumer reporting agency*, Defendant was under no duty to investigate Plaintiff's disputed credit report. *See Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 (E.D. Pa. 2008); *see also Shap v. Capital One Fin. Corp.*, No. 11-cv-4461, 2012 WL 1080127, at *5 (E.D. Pa. Mar. 30, 2012) (A "consumers direct dispute to the furnisher does not trigger a furnisher's duties under § 1681s-2(b)."). Indeed, Plaintiff has not produced any evidence to indicate that a consumer reporting agency notified Defendant of the alleged violation in relation to the issues complained of in January 2018.

"[O]n a motion for summary judgment, a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (internal quotation marks omitted). Indeed, "[t]he party opposing summary judgment, whether *pro*

*se* or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Watson v. Phila. Housing Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. June 4, 2009) (citation omitted). Plaintiff has put forth no such evidence and has not even responded to the instant Motion. Accordingly, because the record is entirely devoid of any evidence of the requisite indirect dispute as it pertains to the $1,800 balance or January 2018 dispute, and because a direct dispute does not trigger a furnisher's obligations under 15 U.S.C. § 1681s-2(b), judgment must be entered in Defendant's favor to the extent his claims relate to the 2018 direct dispute or the $1,800 credit line. Moreover, even if the January 2018 direct dispute triggered Section 1681s-2(b), to the extent Plaintiff's claim is premised on the January 2018 dispute or alleged violations contained therein, his claim is time barred.[3]

Though Plaintiff makes only passing reference to indirect disputes in the Amended Complaint, it appears that Plaintiff initiated two indirect disputes.[4] First, on September 30, 2020, Plaintiff claimed that the Account was "unverified" and he demanded information to validate the Account by way of a dispute to Equifax. ECF No. 32-3, Ex. A. Second, on September 16, 2021, Experian notified Defendant of a dispute which did not include any substantive information or alleged inaccuracies.

Two principles are outcome determinative here. First, Section 1681s-2 "would be nonsensical if a plaintiff could make a claim against a furnisher that it failed to investigate *accurate*

---

[3] The FCRA imposes a two-year statute of limitations after the discovery of the alleged violation. 15 U.S.C. § 1681p. Based on Plaintiff's allegations, he had discovered the alleged violation as of January 2018. Thus, Plaintiff was required to initiate any action premised upon the January 2018 dispute by approximately January 2020. Plaintiff initiated this action on December 21, 2021, nearly four years after discovery of the alleged violation in January 2018. ECF No. 1.

[4] The Court notes that the September 2020 and September 2021 disputes do not form the primary basis of Plaintiff's claims and have been largely unaddressed by Plaintiff in his Amended Complaint and in discovery. *See, e.g.*, ECF No. 32-4, Exs. 1, 2. Rather, such disputes are known only by virtue of Defendant's diligence.

information." *Holland v. Trans Union LLC*, No. 21-cv-152, 2021 WL 5804375, at \*7 (E.D. Pa. Dec. 7, 2021) (emphasis added). This makes sense, because without an inaccuracy, the consumer cannot "satisfy the statutory requirement of actual damages" or establish Article III standing. *See Ostrander v. Trans Union LLC*, No. 20-cv-5227, 2021 WL 3271168, at \*11 (E.D. Pa. July 30, 2021). Second, "[a]bsent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its records." *Krajewski*, 557 F. Supp. 2d at 609. Accordingly, whether the furnisher's investigation is reasonable "depends in large part on the allegations made by the consumer and the notice of the allegations provided to the furnisher by the consumer reporting agency." *Id.*

Plaintiff's September 2020 dispute described the Account as "unverifiable," and he requested "a copy of the original creditors' documentation on file to verify that this information [was his] and correct." ECF No. 32-3, Ex. A. The September 2021 dispute did not include any substantive information regarding the alleged inaccuracies. *See* ECF No. 32-2 ¶ 16. Nevertheless, Plaintiff maintains that the balance owed, account opening date, and payment history were incorrect when he lodged disputes with the consumer reporting agencies (presumably in September 2020 and September 2021) and that Defendant failed to conduct the required investigation.

Plaintiff's allegations are not supported by any evidence. To the extent Plaintiff alleges that the Account was not his or that the account opening date was incorrect, Plaintiff admits that he did indeed open the Account on August 16, 2021. ECF No. 32-4, Ex. 2. Moreover, at the time of the two disputes, Defendant was accurately reporting an Account balance of $0 and an opening date of August 16, 2011. ECF No. 32-2 ¶¶ 10, 18. The Account reflected payments made by Plaintiff and Defendant updated the payment history information in response to the Equifax dispute from

"no payment history available" to "current." *Id.* 12–15, 20–21. On both occasions, Defendant ensured that the consumer reporting agencies had the correct information. *Id.*

First, Plaintiff has wholly failed to produce or identify any evidence to support his claims that the balance owed ($0), the account opening date (August 16, 2011), or the payment history were incorrect. Thus, to the extent that Plaintiff's claims rely upon the September 2020 or September 2021 indirect disputes, which is a generous reading of the *pro se* filings, there is no genuine dispute as to whether the information was inaccurate. This is fatal to Plaintiff's claim. Second, the evidence shows that Defendant investigated Plaintiff's dispute within days of receiving notice from the relevant agencies. *See id.* ¶¶ 14–21. Based on the limited (or nonexistent) information contained in Plaintiff's disputes, Defendant acted reasonably by verifying that the information reported was consistent with its own records. *See Krajewski*, 557 F. Supp. 2d at 609. For these reasons, no reasonable trier of fact could return a verdict for Plaintiff based on the September 2020 or September 2021 disputes and judgment must be granted in Defendant's favor.

## V.     CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted.

BY THE COURT:

/s/ Chad F. Kenney
_____
CHAD F. KENNEY, J.
